IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ELLEN T. BALENTINE, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 2:13-cv-02358-JPM-tmp |
| WANITA ALLEN and SWEETNESS | ) |
| SWEETS, INC., | ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANTS' MOTION TO SET ASIDE JUDGMENT

Before the Court is Defendants' Motion to Set Aside Judgment, filed June 24, 2014. (ECF No. 45.) For the reasons stated below, Defendants' Motion is DENIED.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff filed a Complaint on May 29, 2013. (ECF No. 1.) On June 26, 2013, Plaintiff docketed on ECF an entry purporting to establish that service had been effected as to Defendant Sweetness Sweets, Inc. (ECF No. 7.) That return of service was signed, and indicated service had been effected on Alyshan Taylor, who, according to the return of service, "is designated by law to accept service on behalf Sweetness Sweets, Inc." (Id.) On August 12, 2013, Plaintiff docketed on ECF an entry purporting that service had been effected as to Defendant Wanita Allen. (ECF No. 11.) That return of service was signed and

stated that the summons was given to a relative at Allen's residence. (Id.)

Plaintiff moved for entry of default against Defendant Sweetness Sweets, Inc. on July 17, 2013 (ECF No. 8) and against Defendant Allen on August 29, 2013 (ECF No. 13). The Clerk entered an Order of Entry of Default as to Sweetness Sweets, Inc. on July 22, 2013 (ECF No. 9) and as to Allen on September 11, 2013 (ECF No. 14). On September 11, 2013, Plaintiff moved for Default Judgment as to Allen (ECF No. 15), which the Clerk granted on September 12, 2013 (ECF No. 16). The Clerk entered an Amended Default Judgment as to Allen on September 20, 2014 (ECF No. 19), and a Second Amended Default Judgment on September 24, 2014 (ECF No. 20).

On October 1, 2013, the Court entered a Judgment in favor of Plaintiff against Defendants. (ECF No. 21.)

Allen and Sweetness Sweets, Inc. each filed a Motion to Vacate and Set Aside Default Judgment on January 9, 2014. (ECF Nos. 40, 41.) The Court denied those motions without prejudice on February 4, 2014 for failing to adhere to the Local Rules. (ECF No. 43.) On June 24, 2014, Defendants filed the instant Motion to Set Aside Judgment and to Stay Writ of Execution, alleging that the judgment was void under Rule 60 due to improper service. (ECF No. 45.) Plaintiff filed a Response on July 7, 2014 (ECF No. 47), and Defendants filed a Reply on July

16, 2014 (ECF No. 48).  Without leave of Court, Defendants filed a Supplemental Reply on January 6, 2015.  (ECF No. 60.) Plaintiffs then filed a Surreply on January 6, 2015.  (ECF No. 62.)

On January 6, 2015, the Court held an evidentiary hearing to determine whether service was proper.

**B.    The Evidentiary Hearing**

Alyshan Taylor was the first witness, and testified as follows.  Taylor worked for Sweetness Sweets as a District Manager.  She managed multiple Sweetness Sweets locations. Taylor knew Plaintiff Balentine, who she recalled was manager of the Southland location.  With respect to the instant action, Taylor recalled someone coming to the store in June of 2013 in order to try to serve process on Wanita Allen.  The process server asked for Wanita Allen when he came to the store.  When Taylor told the process server that Allen was not available, the process server put down the envelope and stated, "Well, I'm serving her."  He then turned around and walked out.

On cross-examination, Taylor acknowledged that, at the time of the attempted service, she spoke with Allen on a daily basis. She denied, however, that she had ever reviewed the documents that were left or ever told Allen about the attempted service. According to Taylor, they were not "a top priority" for her at the time.  She did acknowledge, though, that she was aware of

the lawsuit that Balentine had filed at the time the papers were left.

The next witness to testify was Scott Edmond McCard. McCard testified as follows. McCard worked as a process server for Donati Law. He went to a "boutique thing" at the Oak Court Mall in order to attempt to serve process on Allen. When he could not find her, he spoke to her on the phone either on that day or a few days after. He told Allen who he was and about his attempt to serve her. Allen responded that she was in Texas and would be returning soon to Memphis. Allen told McCard that she would get in touch with him when she visited. He brought the service papers back to the law office after his attempts to serve Allen and Sweetness Sweets.

On cross-examination, McCard stated that he had made two attempts to serve Allen: once at her business and once at home. He could neither recall how he found out Allen's phone number nor the name of the person he spoke to at Sweetness Sweets. He remembered, however, that the person he spoke to at Sweetness Sweets was female. When he spoke to Allen on the phone, he did not ask Allen if she lived in Texas and did not ask for an address where she could be served.

Mario P. Allen, Wanita Allen's father, testified next. His testimony is summarized as follows. Wanita Allen lived at 3829 Annette Lane in 2007. Mario Allen holds no position with

Sweetness Sweets. On a Thursday at around 4:00 p.m., a woman came to the house at 3829 Annette Lane. The woman asked whether Wanita Allen was there, and Mario Allen responded that she was not. The woman then asked if she could put her paperwork on the counter. Mario Allen told her that she could not. At that point, the process server went out the back door. Again, the woman asked if she could just leave the paperwork. Mario Allen responded, "No ma'am." A couple of weeks later, Mario Allen discovered the papers stuck in his gate outside. He never spoke to Wanita Allen about the interaction. As to Wanita Allen, Mario Allen stated that she had moved to Cordova in 2007, and then had moved downtown. In 2010 or 2011, Wanita Allen moved to Texas. When she visits Memphis, she typically stays at a hotel.

On cross-examination, Mario Allen stated that he does not get involved in his daughter's business. He denied getting angry at the process server and denied chasing her out. He said that his mother has dementia, so he does not raise his voice. According to Mario Allen, he had gone in and out the outside gate several times before seeing the papers. He said that Wanita Allen had stayed at the Annette Lane house, but it was only one or two nights at a time between 2008 and 2009. He then clarified that it was no more than two nights total that she had stayed. Mario Allen acknowledged that he knows Balentine. According to Mario Allen, he loaned Balentine $3000 in 2011 or

2012 to help her open a business, and Balentine is still paying it off.

The next witness was Wanita Allen, who testified as follows. She lives in Garland Texas, and has resided in Texas since 2012. She is the sole owner of Sweetness Sweets. Sweetness Sweets is made up of several women's boutiques in which necklaces and earrings are sold. Some of the boutiques also do piercings and tattoos. One Store Manager manages the Southland and Oak Court locations of Sweetness Sweets, and each has its own Assistant Manager. Wanita Allen always deals with her Store Managers. All of her managers know that she lives in Texas, and they all know that they are not allowed to accept any documents that come into the store. Wanita Allen was never served personally and recalls no attempts to serve her. During 2013, she never lived at the Annette Lane address. She lived in Texas at that time. Wanita Allen only found out about the lawsuit when she discovered in October of 2013 that there was a default judgment against her. She never spoke to her father about the process server at the Annette Lane home.

On cross-examination, Allen reiterated that she told her employees not to accept paperwork in general, including certified mail. She said that she had no recollection of speaking to McCard. She "receives a lot of calls." Allen acknowledged, however, that she would have remembered a call

about a lawsuit.  She then stated that she did not receive such a call.  Allen then discussed the corporate status of Sweetness Sweets.  She stated that it was incorporated in 2008, but was dissolved in 2012.  Allen acknowledged that she was listed on the 2008 corporate filings as the registered agent at the Annette Lane address.  She further acknowledged that she understands "registered agent" to mean "the point of contact." Allen said that she incorporated Sweetness Sweets again as a Delaware corporation in 2013.

Allen also discussed Gabrielle Wright and Tommy Coates on cross-examination.  According to Allen, Wright was a former sales associate for Sweetness Sweets who may have been employed in 2013.  Allen did not recall any conversation she had with Gabrielle Wright in August of 2013, and does not recall telling Wright that she could be contacted at her father's residence. Allen also never told Wright to accept service, as that was the company policy.  Tommy Coates did body piercing and was employed in August of 2013.  Coates worked with Ms. Wright.  According to Allen, she never told Coates not to talk with Balentine about the lawsuit.

Allen then talked about Alyshan Taylor on cross-examination.  According to Allen, Taylor was District Manager, covering Memphis, Baton Rouge, and Jackson.  In August of 2013, there were three stores in Memphis that Taylor supervised.

Taylor was Allen's main point of contact for the region. The Oak Court location had two to five employees, which is the number of employees that are employed at each Sweetness Sweets location. Both the District Manager and Store Managers had the authority to hire and fire employees.

On redirect, Allen stated that she incorporated the company through Harvard Business Services, Inc. She said that she is the corporation's registered agent. According to Allen, the Raleigh Springs Mall location was closed around the end of 2012 or the beginning of 2013. At that location, there was only one employee at work during the day; although, there might have been a "technician" as well. At the Southland Mall location, there were around one to two employees during the day. Allen testified that the Oak Court location is a little larger than Southland. When Balentine left Sweetness Sweets, Balentine was the Store Manager at Southland. Allen also recalled that Balentine had helped to close the Raleigh Springs location.

Allen said that she never spoke to her father about the documents that were left at the Annette Lane location.

Plaintiff then called Julian Russell Griffin. Griffin testified as follows. Griffin last worked for Donati Law as a paralegal and was asked to effect service as to Wanita Allen and Sweetness Sweets in 2013. Griffin went to the Oak Court Mall location of Sweetness Sweets on June 25, 2013. There, he spoke

to Taylor, who indicated that she was a manager. Griffin handed the service papers to Taylor, who then placed the paperwork down and said that she would make sure that Allen got the paperwork. The paperwork included papers for both Wanita Allen and Sweetness Sweets. Griffin then filed a return of service with the Court.

On cross-examination, Griffin stated that he worked for the Donati Law Firm for approximately thirteen years, and that his last day was October 31, 2014. He recalled that the papers he left with Taylor were in an unsealed envelope. According to Griffin, Taylor did not say anything to him about not being authorized to receive service. In fact, according to Griffin, Taylor took the papers and reviewed the documents while he was there. Griffin stated that Taylor told him that she would make sure that Allen would get the documents. Griffin further testified that he did not see any other employees when he was at Sweetness Sweets, and that the whole interaction took no more than ten minutes. Griffin stated that he filed an affidavit of service in June of 2014. He explained that he did not file it with the Court earlier because he did not think that it would be necessary.

Nancy Lee Hardin was the next witness called. Hardin testified as follows. She was employed by Progressive Process Service from November 2010 until June 2014. During her

employment, she was given two copies of summons to serve at Sweetness Sweets on anyone over the age of eighteen if she could not find Wanita Allen. She went to the Oak Court location of Sweetness Sweets and walked around the store. She met an employee named Tommy who did piercings. Tommy told Hardin that Allen was not there and referred Hardin to Gabrielle Wright. Hardin told Wright that Hardin had to leave the papers with someone in authority at the store, and Wright agreed to take the papers. Hardin then gave Wright a copy of the service paperwork.

Hardin went on to testify about attempting service at the Annette Lane address. She recalled that the house was on a cul-de-sac at 3829 Annette Lane. A young man and an older lady answered the door, and the older lady invited Hardin inside. Hardin told them that she had papers for Allen. The older lady responded that Allen was not there. The man told Hardin that he would call someone. At that point, Mario Allen came in. Hardin informed Mario Allen that she had been instructed to leave papers with a family member of Wanita Allen. Hardin described Mario Allen as unhappy. He told her to leave and directed her to go out the back door. She initially left the papers on the table, but Mario Allen picked them up and gave them back to her. She dropped the papers on the ground as she went away. According to Hardin, when she drove away, she saw Mario Allen

roll up the papers that she had left.  During the encounter,
Mario Allen raised his voice, and Hardin felt threatened.

On cross-examination, Hardin acknowledged that in her
experience, around ninety percent of people being served are not
happy, and that this was not the only time she had ever felt
threatened.  She was at the Annette Lane house for at least five
minutes and perhaps as long as ten minutes.  She went there
looking to find a relative that lived there.  She did not know
who the young man and older woman were with whom she first
talked.  Hardin did not attempt to effect service on the older
woman because she seemed to lack capacity, and she was concerned
that the young man was too young.  Mario Allen identified
himself as "Mario Allen" and stated that Wanita Allen was not
there.  Hardin could not remember if Mario Allen said, or if she
already knew, that he was Wanita Allen's father.

As to the service at Sweetness Sweets, Hardin stated on
cross-examination that she was told to serve anyone over the age
of eighteen.  Tommy had just come out of the back of the store
when Hardin arrived, and she talked to him for five or ten
minutes while Wright helped other customers.  According to
Hardin, she served Wright because Tommy told her that Wright was
the store manager.  Additionally, Wright identified herself as
the store manager.  Hardin told Wright to make sure that Allen

knew that the papers had been served, and Wright agreed to let Allen know.

The last witness to testify was Gabrielle Elkeme Wright. The following is a summary of her testimony. She is currently not employed but worked for Sweetness Sweets for four to five months, including August 1, 2013, which was toward the end of her tenure. Wright was a sales associate and did not hold a manager position. She typically worked at the Oak Court Mall location but worked a few shifts at the Wolfchase location. Wright was not aware of Balentine's lawsuit before she was served. Tommy, the "piercer," was talking to a young lady. Tommy called Wright over. The woman asked if Wright could accept the papers, and Wright took them. Wright then called Allen, whom she recognized by her voice. Wright had met Allen four to five times previously, and Allen had left her number with Wright in the past. Allen also told Wright on one occasion that if she needed to get in touch with her, Wright should call Allen's father's house. During their phone conversation, Allen told Wright that, from that moment on, she should not accept any papers. Wright could not remember if Allen mentioned Balentine, but she recalled Allen saying that someone was trying to bring down her company. Taylor came the next day and took the papers from Wright. Taylor also told Wright not to accept any more

papers.  Taylor had previously given Wright a list of two to three numbers to call in an emergency.

On cross-examination, Wright testified that she had stopped working for Sweetness Sweets in November 2013.  She worked as a sales associate the entire time that she worked at Sweetness Sweets.  The process server specifically told Wright that the papers were for Wanita Allen.  The server did not say she was there to serve anyone else.  She became aware of the server because Tommy Coates, the piercer, got her attention.  The process server identified herself and asked if Wright was a manager.  Wright told the server that she was not.  The server then asked if Wanita Allen was available, and Wright again told her, "No."  Wright did not sign anything.  The papers that the server handed Wright were in a stack and were not in an envelope.  Wright did not review the papers.  She went over to the register and called Taylor.  Wright's call to Taylor went to voicemail.  She spoke to Wanita Allen later that same day. Allen told her not to accept anything else.  Allen said that the allegations in the papers were false, and that "they" were trying to ruin her company.  Allen said that it was somebody that was trying to get into her business.  Wright said that she was never previously told not to accept papers.  According to Wright, the conversation with Allen was conducted on Allen's

cell phone.  Wright did not know where Allen was at the time of the call.

## II.  LEGAL STANDARD

"Where a court has entered judgment on a default, . . . Rule 55 states that a court may set aside that judgment only in accordance with the grounds laid out in Rule 60(b)."  <u>Thompson v. Am. Home Assur. Co.</u>, 95 F.3d 429, 432 (6th Cir. 1996) (citing Fed. R. Civ. P. 55(c)).  The two relevant grounds for setting aside a judgment under Rule 60(b) are newly discovered evidence, and a finding that the judgment was void.[1]  The Court addresses each ground in turn.

### A. Relief Due to Newly Discovered Evidence

Rule 60(b)(2) permits a court to relieve a party from final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . . ."  "The most obvious requirement of 59(b) is that there have been a trial, and 60(b)(2) would seem to require one as well."  <u>Peacock v. Bd.</u>

---

[1] Defendants also allude to Rule 60(b)(6) in their Supplemental Response. (ECF No. 60 at 2-3.)  As Defendants acknowledge, Rule 60(b)(6) only applies in "extraordinary circumstances."  <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 535 (2005).  Defendants' only contention that such extraordinary circumstances are present in this case is that "[t]he Defendants' Motion to Set Aside the Default Judgment, as filed, is entirely within the parameters contemplated by the Rule and case law cite herein and as such the Defendants are seeking relief."  (ECF No. 60 at 2-3.)  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."  <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal alterations and quotation marks omitted).  Accordingly, the Court declines to address Defendants' perfunctory advertence to Rule 60(b)(6).

of Sch. Comm'rs of City of Indianapolis, 721 F.2d 210, 213 (7th Cir. 1983). Despite the apparent requirement of a trial, a number of courts have permitted Rule 60(b)(2) motions following other situations in which the evidence would have been helpful to the movant, such as following grants of Rule 12(b)(6) motions and motions for summary judgment. See Federated Towing & Recovery, LLC v. Praetorian Ins. Co., 283 F.R.D. 644, 664 (D.N.M. 2012) (collecting cases). Additionally, such a motion must be filed "no more than a year after the entry of the judgment . . . ." Fed. R. Civ. P. 60(c)(1).

**B. Relief from a Void Judgment**

Rule 60(b)(4) provides that a court "may relieve a party or its legal representative from a final judgment" if "the judgment is void . . . ." "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271 (2010). Improper service is a jurisdictional error that falls within the ambit of Rule 60(b)(4). Perfect Score Co. v. Miller, No. 1:09 CV 1189, 2011 WL 4540742, at *3 (N.D. Ohio Sept. 29, 2011) ("The Sixth Circuit requires that a court set aside a default judgment if service of process was not proper.") (citing

<u>Jalapeno Prop. Mgmt., L.L.C. v. Dukas</u>, 265 F.3d 506, 515 (6th Cir. 2001) (Batchelder, J., concurring)).

## III. ANALYSIS

### A. Newly Discovered Evidence

Defendants argue in their Supplemental Reply that they have discovered new evidence that requires setting aside the Judgment filed in this case. (ECF No. 60.) Defendants' contentions are unavailing for three reasons.

First, there was no trial nor any other order by the Court that could have been affected in any way by Defendants' earlier discovery of the "time sheets executed by the Plaintiff and payroll records for EllenThomas [sic] Balentine from 20101 [sic] until she resigned from her position in early 2013." (<u>Id.</u> at 1-2.) Because Rule 60(b)(2) applies only when there has actually been a trial – or perhaps in limited other situations in which the new evidence would have helped the movant – the discovery of new evidence cannot provide a ground for a defendant challenging the entry of a default judgment.

Second, Defendants' Rule 60(b)(2) motion was filed as part of their Supplemental Reply outside the one-year time period required by Rule 60(c)(1). The Court entered a judgment for Balentine on October 1, 2013. (ECF No. 21.) Defendants filed their Supplemental Reply on January 6, 2015 – more than a year after Judgment was entered.

16

Third, Rule 60(b)(2) only applies to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . . ." The Court finds that Defendants' own payroll records do not constitute "newly discovered evidence" within the meaning of the Rule.

For all of these reasons, Rule 60(b)(2) provides no relief to Defendants in this case.

### B. Propriety of Service

Defendants argue that service was defective as to both Sweetness Sweets and Wanita Allen. Defendants aver that Alyshan Taylor "was an employee of Sweetness Sweets and a manager in the Plaintiff's stores and was not authorized to accept service on behalf of Wanita Allen, registered agent for Sweetness Sweets." (ECF No. 45-1 at 3.) "Moreover, Ms. Taylor refused to accept the service." (Id. (citing Taylor Decl., ECF No. 45-2).) As to service on Wanita Allen, Defendants argue that it was ineffective because the process server "tossed the paperwork on the ground" by Wanita Allen's father, Mario Allen, after Mario Allen told the process server that Wanita Allen did not live at the address. (ECF No. 45-1 at 4 (citing Mario Allen Decl., ECF No. 45-3).)

Plaintiff argues that service was effective as to both Sweetness Sweets and Wanita Allen. Plaintiff explains that

service was proper as to Sweetness Sweets because Taylor was a "managing agent" of Sweetness Sweets. (ECF No. 47 at 6–7.) Further, Plaintiff argues that service was proper as to Wanita Allen because it was left at a dwelling in which she regularly stays. (Id. at 7–8.)

The Court finds that both Wanita Allen and Sweetness Sweets, Inc. were properly served. Wanita Allen was properly served pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure. As will be explained below, the service on Allen was effective because she was a nonresident individual transacting business through an office in the State of Tennessee, and a copy of the summons and of the complaint was delivered to Alyshan Taylor. Service was proper as to Sweetness Sweets, Inc. under Rule 4(h)(1)(A) because a managing agent of the entity was served.

### 1. Service on Wanita Allen

Rule 4(e)(1) permits service to be performed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . ." Rule 4.04(5) of the Tennessee Rules of Civil Procedure allows service:

> Upon [1] a nonresident individual [2] who transacts business through an office or agency in this state . . . [3] in any action growing out of or connected with the business of that office or agency, [4] by delivering a copy

18

of the summons and of the complaint to the person in charge of the office or agency.

As will be explained, _infra_, the four conditions of Rule 4.04(5) were met in this case.

First, at the time of service, Wanita Allen was a nonresident individual. The Court finds that the evidence introduced at the hearing demonstrated that Wanita Allen was a resident of Texas on the date that Alyshan Taylor was served.

Second, Wanita Allen transacted business through an office or agency in the State of Tennessee. It is uncontroverted that there were several Sweetness Sweets locations in the Memphis area. Because of the lack of any legal veil between Allen and Sweetness Sweets, Allen herself transacted business in Tennessee. Wanita Allen was the sole owner of the Tennessee corporation Sweetness Sweets from 2008 until 2012. Therefore, when the corporation dissolved in 2012, because Wanita Allen remained the sole owner of the remaining entity that continued to do business in Tennessee, Sweetness Sweets became a sole proprietorship. _State v. Pendergrass_, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999) ("A sole proprietorship is '[a] form of business in which one person owns all assets of a business in contrast to a partnership and corporation.'" ) (quoting _Hitt v. Hitt_, No. 02A01-9310-CV-00218, 1994 WL 618608, at *2 (Tenn. Ct. App. Nov. 9, 1994)). "'A sole proprietorship has no separate

legal existence or identity apart from the sole proprietor.'"
Nazi v. Jerry's Oil Co., No. W2013-02638-COA-R3-CV, 2014 WL
3555984, at *11 (Tenn. Ct. App. July 18, 2014) (quoting 18
C.J.S. Corporations § 4); see also Ferguson v. Jenkins, 204
S.W.3d 779, 785–86 (Tenn. Ct. App. 2006) (noting that with
regard to a sole proprietorship, the owner and the business are
"one and the same"); Koch v. Koch, 874 S.W.2d 571, 576 (Tenn.
Ct. App. 1993) ("[A] sole proprietorship is nothing more than an
individual conducting a business for profit, which in turn
becomes his income."). Because Sweetness Sweets and Wanita
Allen were "one and the same" under Tennessee law in 2013, Allen
transacted business herself in Tennessee through multiple
offices as Sweetness Sweets.[2]

Third, this action is "connected with the business" that
Wanita Allen transacted as Sweetness Sweets. Balentine alleged
in her Complaint that she worked for Sweetness Sweets at several
locations in Tennessee – as well as other locations – from
around October 2008 until around March 2013. (Compl. ¶ 9, ECF
No. 1.) Balentine further alleges in her Complaint that "[f]rom
March 2012 until March 2013, Defendant paid Plaintiff at an
hourly rate of $11.75 per hour for a maximum of forty hours of

---

[2] Although under Tennessee law, "[a] dissolved corporation continues its
corporate existence," it cannot "carry on any business, except that
appropriate to wind up and liquidate its business and affairs . . . ." Tenn.
Code Ann. § 48-24-105. Because in 2013 Sweetness Sweets carried on business
unrelated to winding up or liquidating its business and affairs, the entity
doing business as Sweetness Sweets was not the previous corporate entity.

20

work or $470 per week despite the fact that Plaintiff regularly worked in excess of sixty hours in a week," in violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201. (Id. ¶ 13.) The action is therefore "connected with" the business that Wanita Allen transacted in the State of Tennessee after the corporation had dissolved.

Fourth, a copy of the complaint and summons were delivered to a person in charge of the Sweetness Sweets location at the Oak Court Mall. The Court finds that the evidence presented at the hearing demonstrated that Julian Griffin delivered a copy of the complaint as well as a summons for Wanita Allen to Alyshan Taylor. Moreover, because Taylor was the District Manager and had authority over all of the Memphis store locations, the papers were delivered to "the person in charge of the office or agency."

Service was therefore proper as to Wanita Allen under Federal Rule of Civil Procedure 4(e)(1) and Tennessee Rule of Civil Procedure 4.04(5).

### 2. Service on Sweetness Sweets, Inc.

"[T]he dissolution of a corporation does not prevent the commencement of a proceeding against the corporation in its corporate name." Robert J. Denley Co. v. Neal Smith Constr. Co., No. W2006-00629-COA-R3-CV, 2007 WL 1153121, at *9 (Tenn. Ct. App. Apr. 19, 2007) (citing Tenn. Code Ann. § 48-24-

105(b)(5)).  "When a corporation dissolves, its existence ceases 'except that the termination of corporate existence shall not take away or impair any remedy to or against the corporation, its directors, officers or shareholders, for any right or claim existing or any liability incurred, prior to such termination.'" Id. (quoting Tenn.Code Ann. § 48-24-101(b)).

When Balentine initiated this action, Sweetness Sweets was a dissolved corporation.  Its corporate existence, however, continued for the purposes of Balentine's rights against it under the Fair Labor Standards Act.

Balentine's service of Sweetness Sweets was effective as to the Tennessee corporation Sweetness Sweets, Inc. under Federal Rules of Civil Procedure 4(e)(1)and 4(h)(1)(A) as well as Tennessee Rule of Civil Procedure 4.04(4).  Federal Rule of Civil Procedure 4(h)(1)(A) provides that service of a corporation is effective when performed in a manner prescribed by Rule 4(e)(1).  As already explained, supra, Rule 4(e)(1) permits service in this case by following Tennessee law.  Rule 4.04(4) of the Tennessee Rules of Civil Procedure states that service is effective as to a domestic corporation "by delivering a copy of the summons and of the complaint to an officer or managing agent thereof . . . ."  For the reasons articulated above, Taylor was "an officer or managing agent" of Sweetness Sweets, Inc.  Consequently, when Griffin handed a copy of the

Complaint and a summons as to Sweetness Sweets, Inc. to Alyshan

Taylor, service was effective as to the Tennessee corporation

Sweetness Sweets, Inc.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants have no basis under

Rule 60 to set aside the default judgment against them.

Accordingly, Defendants' Motion to Set Aside Judgment and to

Stay Writ of Execution (ECF No. 45) is DENIED, and the Court's

Order Staying Writ of Execution is LIFTED.


**IT IS SO ORDERED,** this 26th day of March, 2015.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE